### Heirs of Guillotte *v.* City of New Orleans.

The plaintiffs being joint owners with the city of the land on which the Magazine street market is erected, and having recovered a judgment against the city fixing their right to a certain proportion of the revenues of the market, the city obtained an order for a sale of the property to effect a partition, and the Council passed a resolution to discontinue the market as a public market. *Held:* That the plaintiffs are entitled to enjoin the execution of the ordinance as an invasion of their right of property and a violation of the tenure and contrary to the title by which the city holds an interest in the the property, as established by the judgments between the parties.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J. *R. N. Ogden* and *F. Buisson,* for plaintiffs. *J. J. Michel,* for defendant and appellant.

BUCHANAN, J. Plaintiffs having sued the city of Lafayette, to whose rights and obligations the defendant has succeeded, in a petitory action, claiming certain land on which the city had erected a market-house; that suit was terminated by a judgment of the Supreme Court in May, 1850, decreeing that plaintiffs recover of defendant one undivided half of the said land. See the case reported in 5 An. 382.

Plaintiffs afterwards sued the city for the fruits and revenues of the property thus recovered, and by final judgment of the Sixth District Court of New Orleans, rendered in December, 1853, it was decreed, "that plaintiffs recover of defendant the sum of $2982 15, and further that plaintiffs recover of defendant in the proportion of one to two sixty-hundredths of the revenues of the property mentioned in the petition hereafter at such times as the revenues may be received."

Plaintiffs and defendant have continued ever since the last mentioned judgment to occupy the property and divide its fruits and revenues in the proportion fixed by the judgment. But the city of New Orleans, having become tired of this joint ownership and occupation, brought suit against the heirs of *Guillotte,* on the 10th of May, 1855, for a partition of the property (described in their petition as consisting of the land, a large and valuable market-house, known as the Magazine street market, and the rents, profits and revenues derived from said market,) by licitation; alleging that the same cannot be divided in kind.

In that suit a judgment of nonsuit having been rendered against the city in the District Court, the city appealed, and succeeded in obtaining (in November, 1856,) a decree of this court, reversing the judgment of the District Court, and ordering that there be a partition of the property held in common, by public sale to the highest bidder, after legal advertisements, and upon such terms as the parties shall agree upon, or in case they cannot agree, the terms of sale to be fixed by the District Court.

Thereupon the City Council of New Orleans passed the following resolution, which was approved by the Mayor:

"Whereas, the property now occupied by the Magazine street market, corner of Magazine street and St. Mary street, is to be sold in order to effect a partition under a decree of the Supreme Court, rendered in the case of *The City of New Orleans* v. *The Heirs of Guillotte*—

"Therefore be it resolved, that from and after the first day of March, 1857,

GUILLOTTE
*v.*
NEW ORLEANS.

the said Magazine street market shall be discontinued as a public market of this city."

The plaintiffs have enjoined the execution of this ordinance or resolution of the City Council, as being calculated greatly to injure plaintiffs' rights. They allege, with reason, that the principal value of the property sought to be partitioned consists in its character of a market. It is shown that the revenue derived from this market is steadily and rapidly increasing from year to year, having augmented from seventeen hundred and fifty dollars in 1848 to thirteen thousand three hundred and fifty dollars in 1856. Of this revenue five-eighteenths belong to plaintiffs by the terms of the judgment which has fixed the rights of the parties, a proportion which in 1856 amounted to $3708 33, while the share of the defendant for the same year was $9641 67. And note that there is a certainty of this income becoming larger, based on the experience of the past, as contained in the Comptroller's reports in evidence.

The resolution of the City Council, of which the plaintiffs complain, at once cuts off this large and increasing revenue, for the market-house is of no value as a means of revenue if the market kept there be discontinued, it being nothing more than a roof supported by columns, and open at all sides.

So far as the interests of the city are concerned, it might be conceded that the Council, as the administrator of the city finances, had the right to do this, however injurious to the city pecuniarily, and however inconvenient and vexatious to the inhabitants of the populous district which resorts to this market for its daily supply of provisions.

But there are other parties which have a vested right in this market and its revenues which the City Council will not be allowed to disregard or to sacrifice. Those parties are the plaintiffs, who have sued out this injunction against the execution of the resolution in question.

It appears to us that the resolution of the 7th January, 1857, copied above, is a direct and palpable invasion of the plaintiffs' right of property; that it is violative of the tenure and contrary to the title by which alone the city holds an interest in this property. That tenure and that title are found in the judgments of May, 1850, and December, 1853, above recited.

The resolution is likewise contrary to the intent and meaning of the judgment of this court, rendered in November last, in the partition suit, and will, if carried out, render the licitation, which has been decreed on the prayer of the city itself, nothing but a mockery and a delusion.

Judgment affirmed, with costs.

Mr. Justice COLE took no part in this decision.

MERRICK, C. J. I do not think the City Council ought to be permitted to change the destination of the common property during the progress of the proceedings for partition, for this would be especially injurious to both parties. I understand the law to be the same in regard to partners and to property held in common. The courts will not permit a partner to withdraw at an improper time, nor a co-proprietor to change the destination of property when it will occasion one or both parties great damage unless a reasonable notice of such intention has been previously given. On this ground I concur in the decree.

But if the doctrine of the opinion is to be understood to be that the city is not the absolute owner of whatever property it may own in fee simple in the market, as fully as any other co-proprietor, and that the city cannot regulate the times and places where markets shall be held, and discontinue old and

establish new ones, and that the purchaser of the common property of these parties, sold to effect a partition, can continue it as a market in spite of the city, after the same shall have given a reasonable notice, then I dissent from the doctrine asserted by the majority of the court. For it is not in the power of the courts to impress upon property a particular character, and declare that a place shall remain a market, or a plantation now cultivated in cane shall remain a sugar plantation forever, or the like. The purchaser of the market in my opinion will only acquire the fee simple in the soil and buildings, with the right to do whatever he pleases with his property not prohibited by law and the legal ordinances of the City Council.