CITY OF NEW ORLEANS *v.* THE HEIRS OF GUILLOTTE.—ON A RE-HEARING.

The city of New Orleans having voluntarily accepted a partnership with individuals in the profits to be derived from a market-house, cannot claim to be on a different footing as regards its social rights, at least in what regards the financial administration of the partnership property, from another partner. The peculiar quality of this corporation, clothed by the Constitution with many of the most important functions of government, does not take from the other party to the partnership the right to be consulted in matters which concerned the social interest.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.
    J. J. *Michel,* for plaintiff and appellant.   *F. Buisson* and *R. N. Ogden,* for defendants.

BUCHANAN, J.   In this case, it has been decreed by this court, in conformity to the demand of the plaintiff's petition, that a partition should be made of the Magazine street market, held in partnership by plaintiff and defendants; and, as the impossibility of making the partition in kind was proved, it was ordered that the partition should be made by licitation.   See Opinion Book 27, p. 12.

As the year for which the market was farmed was approaching its termination, when this judgment was rendered, the city council, by resolution, ordered that this particular market should not be farmed for the coming year, to the highest bidder, as the other markets, but that the commissary of the market should collect the market dues to the day of sale, rendering an account

and paying over to the City Treasurer, day by day, the dues thus received. The defendants remonstrated against this change in the mode of administering the revenues of the market, as injurious to their interest; and notified the council that a person named by them, and who would give unquestionable security, was prepared to give at the rate of fifteen thousand dollars a year, or twelve hundred and fifty dollars a month, for the privilege of collecting the revenues of the market in question, until the sale of the market be effected under the judgment of partition. This proposition was rejected by the council, and a rule was taken in the suit by defendants, to compel the plaintiff to submit to this provisional arrangement, as being for the interest of both parties concerned. The rule was, upon hearing of the argument and evidence, made absolute, and plaintiff has appealed.

The price offered for the farm of the revenues of the market, is proved to be eleven per cent. greater than that which was received last year, and no evidence has been offered by plaintiff impugning either the sufficiency of the rent, or of the security offered for its payment. The solvency of the sureties offered has been proved, on the part of defendants, by the evidence of those sureties themselves. This is not contradicted, the plaintiffs resting altogether upon their claim of an exclusive right of the city government to regulate the administration of the revenues of the public markets of the city.

A more mature consideration of this interesting question, upon a re-hearing granted, has satisfied us that circumstances of this case make it an exception to the rule governing the administration of the markets of New Orleans in general.

The city has voluntarily accepted a partnership with individuals, in the profits to be derived from a market-house. Having done so, it cannot claim to be on a different footing, as regards its social rights, at least in what regards the financial administration of the partnership property, from another partner. In vain does the city appeal to its peculiar quality of a corporation clothed by the Constitution and laws of the State, with many of the most important functions of government. Its partners, the defendants, had a right to be consulted in a matter which concerned the social interest. If, indeed, the defendants had asked to disturb and innovate upon the practice established by law and usage in the administration of the market, the case would have been very different. But it is, on the contrary, the city which, to the injury of the defendants, as the evidence seems to demonstrate, commits an invotion of that kind.

The judgment heretofore rendered by us on this appeal, is, therefore, set aside and annulled; and it is adjudged and decreed, that the judgment of the district court be affirmed with costs.

Mr. Justice Cole took no part in this decision.

MERRICK, C. J., dissenting. I see no reason to depart from the doctrines and conclusions contained in the opinion of this court first pronounced in this case. The joint ownership of the soil by the *Heirs of Guillotte* with the city, gives the former no right to interfere with the police of the market nor the regulations which the city authorities may deem it necessary from time to time to ordain, for the sale of provisions within the market. The power to establish markets and regulate the administration of the same, has been conferred by the people and the Legislature upon the common council. It is a portion of the sovereign power delegated to them. *First Municipality* v. *Cutting*, 4 An. 336.

If a private person allows the city to hold a market over his soil, he must submit to such regulations as the city authorities see fit to enact. He may withdraw his property from the city, or claim an indemnity for the same, but so long as he suffers his property to be used as a market, he submits it to the authorities having the power to regulate, and, as a consequence, administer the market. So also as to the joint owner with the city. He may compel a partition if he chooses, but he cannot interfere with the regulations which the city may adopt for its control, management and police; nor can he prevent the city from discontinuing the market altogether, when it shall deem that the public interest requires such discontinuance. Having conceded this much as incontestible, I find myself unable to bring about a conclusion differing from that arrived at on the former occasion.

It appears to me to follow, that the common council alone have the power to judge of the expediency of farming the market or of placing the collection of the dues under the direction of an officer, such as the commissary of the market. They have also the power to decide upon the fitness of the person who is to exercise the functions of such office. Should it appear to them that the public interest would be better protected; that there would be better order, less extortion, and a more certain and efficient collection of the dues, by placing a market in a populous portion of the city under the control of an officer of the police (as they attempted to do in this instance), in my opinion they had not only the right, but it was their duty to note such regulation in the interests of public order.

Although a market may not be a *locus publicus* in the sense that the ownership of the soil is necessarily vested in the public, still it is a public place in this sense. It is a place to which all persons have a right to resort daily, to supply themselves with such provisions and necessaries as are there vended. And as order and cleanliness are essential to the public welfare and health, the market, which is thronged at certain hours with all classes of persons and filled with all manner of perishable comestibles, must, of necessity, be under the control of a vigorous and efficient police to prevent it from becoming an intolerable nuisance. It is, therefore, a public place, because it is submitted to the exclusive control and government of the city authorities. In the case of *Cutting*, just cited, this court said: "The right to establish markets is a branch of the sovereign power and the right of regulating them, is necessarily a power of municipal police. See Blackstone Com. 1 vol., 274; Domat Droit Public, lib. 1, sec. 3. This is vested by positive law in the Mayor and council of each municipality, upon whom rests the responsibility of the peace, comfort and order of the assemblages collected at fixed hours at these great thoroughfares."

I will add that markets are not established as sources of public or private profit, but for the public good.

There is but one way of judging of the exercise of the legislative power which may be conferred upon municipal corporations. It is to inquire whether they violate any principles of the Constitutions of the State and the United States, and any legislative enactments. If they do not, the ordinances of such bodies on the subjects delegated to them, have the force of supreme law, and the courts have no option but to compel obedience to the same. To control them would be to legislate for them. 7 M. R. 4, *Claiborne* v. *Police Jury*.

Looking at the ordinance of the common council in this light, I find the de_

fendants anxious that the joint property shall still be administered as a market, and that the common council have legislated upon a subject-matter submitted to their control. Does it violate any provision of the Constitution or any statute law ? I cannot find that it does.

But it is said that the defendants have tendered to the court a person who will lease the market and will give the city eleven per cent. more than was given the year previous.

Supposing the individual a suitable person to take charge of the market, and that he will be prompt and efficient, and practice no injustice or extortion, still it does not appear to me that the resolutions in question work any injustice to the defendants.

The markets are regulated and the dues and revenues are collected under ordinances and regulations of the city. As the farmer and lessee cannot exact more than allowed by the regulations, so it is not to be supposed that the officer charged with making the collections will receive less. If the joint proprietor, therefore, receives his proportion of the exact income of the market, there is no room for complaint. Certain it is, he does not expect the city to join in an unjust speculation to be made out of the lessee whom he tenders to take the control and the revenues of the market.

Neither have I heard it objected that the commissary of this market, to whom the collection of the dues are intrusted by the ordinance, is wanting in integrity, or that he is not energetic and efficient.

Suppose the courts to take from the city the control of the markets, where can they find powers for their government and police ? Their powers are judicial and not legislative.

I cannot, therefore, see any sufficient justification for a judicial interference with the common council of New Orleans in a matter by law left to their control as a legislative body to whom a portion of the sovereign power has been delegated, and whose official acts as such on all things within their jurisdiction, have the force of law.

---

OVERRULED OPINIONS.

COLE, J. The parties are joint owners of the Magazine street market, and are entitled to receive their respective share of its revenues in the proportion fixed by a final judgment, signed 29th December, 1853. On the 17th of November, 1856, this court having decided that this market should be sold for the purpose of effecting a partition among the co-proprietors, the city of New Orleans did not sell the lease thereof for the year 1857, but passed a resolution authorizing the commissary of the market to collect its revenues under existing ordinances, and to pay the same into the treasury of the city, where an account thereof is kept.

The defendants were not satisfied with this proceeding of the council, and on the 23d of December, 1856, took a rule on the city to show cause, why they should not be ordered to accept a certain proposal, made by *L. Armingaud*, who had offered to the city council to collect the revenues of the said market-house, and to account for the same, at the rate of $15,000 per year, until the sale of the property for the purpose of partition should be made.

The District Court made the rule absolute ordering him to collect the revenues, and to pay monthly into the hands of the City Treasurer a sum of $1,250.

He was also ordered to furnish a bond in the sum of $20,000.

From this judgment the city has appealed.

The question in this case is, whether the city of New Orleans has the exclusive control of collecting the revenues of the Magazine street market?

This must be answered in the affirmative.

The authorities of the city of New Orleans alone have, by law, the right to ordain in what places markets shall be held; they have then the right of regulating this market; of authorising therein the sale of some articles and of prohibiting that of other commodities. They can also make it a source of revenue to the city by requiring the vendors therein to pay certain prices for the privilege of selling, and they have the right to collect the same by any one they think proper, or to farm out, for a fixed price, the right of collecting and keeping the revenues of the said market.

These prerogatives constitute a part of the police power of the city.

Appellees seem to think they have a right to a joint control of the collection of the revenues, because they and the city are joint owners of the market-house; their error consists in mingling the right of property in the market-house, with the right to the market therein held. The market-house

NEW ORLEANS
*v.*
GUILLOTTE.

and the market therein held are distinct; the former may be joint property, but the latter is created by the city, the vendors therein derive their right from the city, and it alone can ordain how much they shall pay for the privilege of selling and collect the revenues for the same. Although, then, the parties are joint owners of the property, and entitled to a partition of revenues in due time, according to their respective shares, yet they are not joint owners of the right to give authority to sell in the market-house, to regulate the price, or to collect the revenues. It is not a valid reason to take from the city its police power, because it may in error have built a market-house on private property.

If authority to constitute a market exists alone in the city, then the prerogative of fixing prices for the privilege of selling therein, and of collecting the revenues thereof, is vested solely in its authorities. Vide *First Municipality* v. *Cutting*, 4 An, 386; Act amending Act to incorporate the city of New Orleans, approved March 14th, 1816; Bullard and Curry, p. 101, 1st sec.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed; and proceeding to render such judgment as ought to have been rendered by the lower court, it is ordered, adjudged and decreed, that the rule taken in this case by defendants, be discharged with costs in both courts.

VOORHIES, J., dissenting. In our former decision between the parties, in remanding the case for a partition by licitation, we observed: "It appears to us erroneous to style the Magazine street market a *locus publicus*. Market-houses are not included in the enumeration of *public* things, contained in Articles 444, 445 and 446 of the Civil Code. A market-house may well be the subject of *private ownership*. In many cities, butcher's meat, fish and vegetables are sold in shops, like any other commodity. Even in New Orleans there are to be found market-houses which belong to individuals, &c.   *   *   *   *   But from this general power of establishing markets and regulating butchers, it does not seem to follow, that the city corporation must needs be the owner of all the market-houses within its limits, any more than of all the bakeries and taverns, whose occupants are subjected to the same municipal supervision, &c." A. R.

It cannot be denied, that the police of the city extends over all the market-houses within its limits, whether held by lessees under it, or owned by individuals. Neither can it be denied that the city has the exclusive right to fix the rent of its own market-houses, and regulate the mode of collecting the same But has it the exclusive right either to lease or to direct the mode of collecting the rent of market-houses belonging to individuals? Clearly not. Then, in her joint ownership of such property, as in the case at bar, it is difficult to perceive any good reason why the city should be vested with any more right than the other party in fixing and collecting the rents thereof.

The plaintiff is appellant from a judgment making the following rule absolute, and claims the exclusive right to collect the rents of the property in question, pending the litigation, viz:

" On motion, &c.—It is ordered by the court, that plaintiff do show cause why they should not accept the proposal of *Louis Armingaud* to collect the revenue of the lower Magazine street market from and after the 1st January, 1857, and to account to the owners of said market at the rate of $1,333 33 per month, until the sale of said market be effected, pursuant to the judgment of the Supreme Court."

The court *a quo* considering it necessary, in order to secure the interest of both parties in the collection of the revenues until the partition by licitation under the decree of this court, ordered that the plaintiff " proceed at once to farm out the *collection* of said *revenues* in the usual manner, and after due advertisements, by sale at public auction, the farmer or lessee to take the same only up to the said licitation, *and that in the meantime and until the plaintiff shall have so farmed said revenues, Louis Armingaud be appointed and authorized to collect said revenues from and after the 1st of January*, 1857, and to account for the same at the rate of $15,000 per annum, and to pay over to the City Treasurer on the last day of every month, the sum of $1,250, on his entering into bond in the sum of $20,000 in favor of plaintiff and defendants, according to their respective rights, for the faithful performance of his duties," &c.

By a judgment of the Sixth District Court of New Orleans between the parties, their respective proportions in the property in question has been finally fixed.

The only ground urged in answer to the rule is, " that the collection of the revenues of the markets of this city is entrusted to the Common Council of the city of New Orleans, and they cannot be divested of said trust. That the maintaining of the rule would cause plaintiff damages in the sum of $500."

It is evident that the proposition assumed, can only apply to market-houses of which the city is the exclusive or sole owner, and not to such as belong to individuals, or of which it is a joint owner, as in the present case. It is difficult to perceive in what respect the appellant is aggrieved by the order of the court authorizing a third person, under a heavy bond, in consequence of the disagreement of the parties, to collect the revenues of the property and to account to them for the same, as we have seen. There is not an iota of evidence in the record, to show the alleged damages. On the contrary, both parties are damaged by the course of the City Council. Neither party having the exclusive possession or control of the property, it was therefore fit and proper, under the peculiar circumstances of the case, for the court, in the exercise of its discretionary and equitable power, thus to protect the interest of both parties, and to make the property bring as large a revenue as possible. And it must be observed, that the plaintiff complains with bad grace, for the order has conferred upon it more authority than that sanctioned under the rules prescribed by law, as to the rights and obligations of parties in regard to private ownership. The appellees, perhaps, would have the right to complain, but they have not done so.

I am, therefore, of opinion, that the judgment of the court below ought to be affirmed.

SPOFFORD, J., concurred in this opinion