NEW ORLEANS (BONNER v.). See Case No. 1,631.

NEW ORLEANS (GAINES v.). See Case No. 5,177.

NEW ORLEANS (GRAVIER v.). See Case No. 5,711.

NEW ORLEANS (INSURANCE CO. v.). See Case No. 7,052.

NEW ORLEANS (JOHN KYLE STEAMBOAT CO. v.). See Case No. 7,354.

NEW ORLEANS (MAENHAUT v.). See Cases Nos. 8,939 and 8,940.

## Case No. 10,182.
### NEW ORLEANS v. MORRIS.
[3 Woods, 103.][1]

Circuit Court, D. Louisiana. Nov. Term, 1877.

MUNICIPAL CORPORATIONS—PROPERTY SUBJECT TO SEIZURE ON EXECUTION—POLICE POWER.

1. The property of a municipal corporation necessary to the exercise of its functions, such as markets, prisons, etc., or property which has been destined and set apart by an act of the legislature as a permanent revenue, or source of permanent revenue for the corporation, cannot be seized or sold on execution against it.

2. A place of traffic called a market bazaar, owned by a municipal corporation for the sale of merchandise, from which the sale of fresh meats, fish and vegetables was excluded, and which had been rented out by the corporation for a term of years, is not such a market as is protected from execution, and no authority having been given by the legislature to establish such a bazaar, it is subject to levy and sale.

[Cited in City of Laredo v. Benavides (Tex. Civ. App.) 25 S. W. 486.]

3. Markets are places where comestibles, perishable in their nature, are sold for the daily consumption of the people, which, from the very nature of the things therein sold, require sanitary regulations, and thus fall within the police power of cities.

4. A municipal corporation cannot, by its own act, independent of any legislative authority, make a thing which is not necessary to its municipal existence, or to the exercise of the powers which fairly belong to it, a permanent source of revenue, and thereby exempt the thing and the revenue derived from it from seizure on execution.

[Cited in City of New Orleans v. Louisiana Const. Co., 140 U. S. 662, 11 Sup. Ct. 971.]

5. A bill in equity will not lie to restrain an execution issued on a judgment at law upon grounds which might have been urged as a defense to the action at law.

[Cited in State v. Matley, 17 Neb. 568, 24 N. W. 201.]

In equity. Heard on motion for injunction. The bill was filed to obtain an injunction forbidding the seizure and sale, on execution, of the market bazaar, the property of the city of New Orleans, to satisfy a judgment recovered against the city by [John A. Morris] the defendant to the bill.

B. F. Jonas, City Atty., for complainant.

Thomas J. Semmes, for defendant.

BILLINGS, District Judge. This case is before me on an application for an injunction. The hearing is upon the bill, the sworn answer, affidavits and a counter affidavit.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

There seems to be no dispute about the facts.

On the 26th day of May, 1875, the defendant in the bill obtained upon the law side of the court a judgment against the complainant for the sum of fifty-three thousand dollars, with interest. A pluries writ of fieri facias has issued upon this judgment at law, and under that writ there has been seized the interest of the city in a bazaar market, and the land on which the same stands. In the year 1869 the city owned a piece of land. It executed a contract with William H. Wells, whereby he was to construct a building which was to be used for stalls for the sale of merchandise, exclusive of fresh meats, salt meats, fish and vegetables. The contract with Wells strictly followed the terms of an ordinance of the city council, which ordinance declared that the said building was made a source of public revenue. The building was constructed and leased for the period of ten years. Rent notes were given, but prior to the seizure, the unmatured notes were withdrawn and delivered up to the maker. The seizure is of the interest of the city, subject to all the leasehold rights of Wells and his assigns.

This is a bill in equity, then, to restrain the enforcement of a levy under an execution issuing upon a judgment at law. The bill sets forth two grounds upon which the decree is sought. First, that the property seized is a source of public revenue to a municipal corporation, and therefore is not liable to seizure under a fi. fa.; and, secondly, that the obligation on the part of the city upon which the judgment was obtained, pledged in perpetuity to the obligee certain property, and created no other obligation, and that, therefore, the plaintiff in the judgment at law, the defendant here, cannot resort to other property of the defendant beyond that to which he was restricted in the obligation. First, that the bazaar market and the ground upon which it stands are not subject to seizure; because they are sources of public revenue to the city. It was conceded by the solicitors on both sides that certain property belonging to the city is exempt from seizure; the discussion upon this branch of the case being altogether as to where the line limiting the exemption should be drawn. Much light is thrown upon this subject by a careful consideration of the decisions of the supreme court of Louisiana bearing upon it. In Egerton v. Third Municipality, 1 La. Ann. 435, it was held "that taxes were not the subject of a levy under an execution." In that case an attempt had been made to garnishee the tax-payers. In the case of Police Jury of West Baton Rouge v. Michel, 4 La. Ann. 84, it was held that the court house and jail of a parish were not subjects of seizure. In the case of Municipality No. 3 v. Hart, 6 La. Ann. 570, it was held that the funds collected on judgments for taxes in the hands of a constable were not liable to seizure. In the case of New Orleans &

C. R. Co. v. Municipality No. 1, 7 La. Ann. 148, it was held that "ground rents to which the legislature had given a destination or appropriation, as a portion of the permanent revenue of the city to enable the municipal authority to exercise its powers of police and government, were removed beyond seizure." The circuit court, in the case of Peterkin v. New Orleans [Case No. 11,026], and in two unreported cases, that of Hayem v. City, and Klein v. City, No. 7,801, has followed the law as laid down by the supreme court of this state. In the first of these cases the circuit court held that "money which had been received in payment of taxes by the city was not from the mere fact that it was deposited in a bank made subject to seizure." In the case of Hayem v. City, it was held that "a party who had given rent notes as lessee of what was beyond all dispute a market, could not compensate against these notes the ordinary obligations of the city." The case of Klein v. City, was but a reiteration of the doctrine laid down by the supreme court of the state, in the case of New Orleans & C. R. Co. v. Municipality No. 1, supra. An analysis of all these decisions shows that the exemption has not been extended beyond two classes of cases. The one where the property seized, as in the case of taxes, court-houses, jails and markets was of such a nature as to be necessary to the continued exercise of the functions of the corporation, indeed, to its very existence; the other, where the property has been destined and set apart by an act of the legislature as a permanent revenue of the city, or a source of permanent revenue.

Does this case fall within either of these classes? If a market bazaar, that is to say, a place in which merchandise is sold and purchased, but from which traffic in all comestibles is excluded, can be considered a market, it would fall within both of these classes; if it cannot be considered as a market, then it would fall within neither, for it is not contended that the legislature has given the city any authority to establish a market bazaar unless it be contained in the general authority to establish market places. The nature of a market, to wit, a place where vegetables, fish and meats of all sorts are furnished for the daily sustenance of the population of a city, makes it an incident, and, indeed, a necessity, to a large and populous town. The establishment and regulation of such places is but the exercise of the police power of a city for the preservation of the health of the citizens; but with reference to a market bazaar no such necessity exists. Any block of buildings used for selling dry goods is as much within the purview of this police power as is a market bazaar. I think, therefore, the nature of the thing is against its having any public destination, as being a municipal necessity. Secondly, has the legislature given to the city the power to establish a market bazaar as distinguished from a

market? In the amended charter of the city (Acts 1870, No. 7, pp. 35, 36, § 12), the city is given the power in subdivision fifth to fix the mode of inspecting all comestibles sold, either in the market or other public places, and by the thirteenth subdivision to establish ferries and market places. Although these clauses are separated in the charter, yet in the Acts of 1816 (page 92, § 1, cited in Bullard & Curry's Digest, at page 100), as originally enacted, they occur together as a distinct branch of a sentence, as follows: "To establish one or more market places, and to determine the mode of inspection of all comestibles sold publicly either in said market or markets, or in other places." The inference, therefore, is that the legislature originally confined markets to places where comestibles should be sold. In the case of Morano v. Mayor, etc., 2 La. 217, the supreme court, through Martin, J., says: "The city council has the power to establish markets and to provide for the cleanliness and salubrity of the city. In establishing markets they designate certain spots or places for the sale of certain articles of provisions. In doing so they facilitate the people in the purchase of provisions of the first necessity by confining the sale of them to particular places and hours of the day; and they facilitate the inspection of provisions, and by the hire of stalls they raise money to defray the expenses of building market-houses, and pay the salaries of officers they appoint to prevent the sale of unsound provisions; and they have an undoubted right to prevent the violation of the ordinances they may pass in establishing markets." In the case of David's Heir v. City of New Orleans, 16 La. Ann. 404, the supreme court says: "In two cases, David v. Municipality No. 2, decided in December, 1853, and not reported, and in the case of Guillotte's Heirs v. City of New Orleans [12 La. Ann. 479], decided in November, 1856, it was expressly held that a market-house is not necessarily public property, but may be the object of individual ownership. It is a place to which the public have free admission for the purpose of purchasing provisions. But the right of selling them is not free to the public at large. That right is usually reserved to a limited number for a rent paid." In City of New Orleans v. Guillotte's Heirs, 12 La. Ann. 818, the supreme court says as follows: "Although a market may not be a locus publicus in the sense that the ownership of the soil is necessarily vested in the public, still it is a public place in this sense. It is a place to which all persons have a right to resort daily to supply themselves with such provisions and necessaries as are there vended; and as order and cleanliness are essential to the public welfare and health, the market, which is thronged at certain hours with all classes of persons, and filled with all manner of perishable comestibles, must, of necessity, be under the control of a vigorous and efficient

police, to prevent it from becoming an intolerable nuisance. It is, therefore, a public place, because it is submitted to the exclusive control and government of the city authorities." In the case of First Municipality v. Cutting, 4 La. Ann. 335, this court said: "The right to establish markets is a branch of the sovereign power, and the right of regulating them is necessarily a power of municipal police. See 1 Bl. Comm. p. 274; Domat, Droit Public, lib. 1, § 3. This is vested by positive law in the mayor and council of each municipality upon whom rests the responsibility of the peace, comfort and order of the assemblages collected at fixed hours at these great thoroughfares." I will add that markets are not established as a source of public or private profit, but for the public good. I think that the supreme court in these cases in which they have incidentally spoken of markets, have unmistakably characterized them, and that, as thus characterized by that tribunal, markets are places where comestibles, perishable in their nature, are sold for the daily consumption of the people, which, from the very nature of the things therein sold, require peculiar sanitary regulations, and thus fall within the police power of cities. If this limitation be not accepted, then the right of a city to establish and regulate the place, time and manner of selling everything in which men deal must be conceded. Can it be that the legislature meant to make the police power of a city a vortex which should draw into itself the regulation of all the commerce of the city? That is the question.

It seems to me that the city, when it executed the contract under which the market bazaar was created and leased, by the very terms they employed, by their coupling together the two substantives, market and bazaar, and designating the place a market bazaar, show that the place which they established there, although resembling a market, was, in their opinion and intention, different from a market; that is, it was a place in which the manner of sale of articles was to be the same as in a market, but from which the things ordinarily sold in a market were altogether excluded. The method was that of a market, the matter entirely distinct. But the whole power of the city over markets springs from the fact that vegetables and meats liable to decay and putrefy are therein sold daily in large quantities; these being excluded from the place, it loses the essential quality of a market as it is defined in our jurisprudence. I think, therefore, that the designation of this market bazaar as a public revenue rests entirely upon the ordinance of the city itself, and has a legal foundation neither in the nature of the thing nor in any act of the legislature. But it cannot be contended that the city can, by its own act and independent of any legislative authority, make a thing which is not necessary to its municipal existence, nor to

the exercise of the powers which fairly belong to the municipal corporation, a permanent source of revenue, and thereby exempt the revenue and the thing from seizure under execution. If this doctrine be admitted the city might build and run factories, and, having simply declared that they made them sources of public revenue, render them exempt. I do not find that any of the decisions or the text-writers go to this length, but, on the contrary, limit the exemption to the two classes of cases above specified, first, to such things as are necessities to the existence or successful operation of a corporation; or, second, to such things as by the statute have been set apart as public revenue for the city. In neither of these classes does this case fall. The character of the title under which the city holds the land upon which the market bazaar is built has not been discovered. Second, it is urged that the nature of the original obligation upon which the judgment of law was rendered was such as to preclude the defendant from making the seizure upon this property.

My own opinion in the case of Ranger v. City of New Orleans [Case No. 11,564], was cited and urged as having a bearing on this question. In that case I held that the power to tax was a prerogative of the legislature, and not in any sense judicial. That since the legislature had clearly implied in the act authorizing the obligations that they were not to be paid by taxation, the court could not direct a tax to be levied to pay them in the absence of any provision of the legislature to that effect, I therefore refused the mandamus directing the levy of a tax. The doctrine which I there laid down, if correct, would have been a complete defense to the action at law. The ground of the decision in that case was that the legislature had not authorized the levy of the tax. A subsequent case, in which a mandamus was asked to compel the city council to put a judgment into the annual budget, accordingly as the legislature has directed should be done, with final judgments against the city, is now under consideration. In the Ranger Case it was enough to say there was no act of the legislature authorizing the levy of the tax, and authority could not be implied, because the legislature intended the obligation should be paid out of the specific property, and only to that extent was the city bound. My conclusion in that case may be entirely correct—that the city was not bound as a general debtor upon its bonds, and my conclusion here may be equally correct, that the levy of this execution cannot be stayed. In a word, the defense to a debt is one thing, the defense against a final judgment, in which the debt is merged, is quite another. The question in the Ranger Case was whether the authority to levy the tax could be inferred from its having authorized the issuance of the bonds, for it was that ground alone upon which the argument

for the mandamus was based. My conclusion was that the legislature, in the act which gave the authority, so far from giving power to tax, by implication, had negatived any such power, and, as it seems to me, limited the obligation to that of a pledge of certain specified property. The case of Klein v. City of New Orleans was also cited, and it was thought I had then passed upon a similar question. I have examined the bill of exceptions in that case, and find that my ruling was confined entirely to the fact that squares which were public property, which formed a portion of the wharves, or levees, and ground rents, which were considered to be public revenue, could not be seized. Indeed, the question here is simply this: Will a suit in equity lie to restrain a seizure under an execution, issued on a judgment at law, upon grounds which might have been urged as a defense in the action at law? I find the authorities, without exception, to hold that such a suit will not lie. 3 Daniell, Ch. Prac. (Perk. Ed.) 1728; Kerr, Inj. 22; and the numerous authorities cited by these authors. Judge Story, in his Treatise on Equity Jurisprudence (section 894), says: "In the next place, courts of equity will not relieve against a judgment at law where the case in equity proceeds upon a defense equally available at law, but the plaintiff ought to establish some special ground for relief."

The injunction must, therefore, be denied.

[For proceedings on a motion for injunction based on amended bill, see Case No. 10,183.]