## PLUMB *et al.* v. CHRISTIE *et al.*, commissioners, *et al.* PLUMB v. WHITEHEAD, clerk.

1. No one has a property right to have issued to him a license to sell intoxicating liquors.
2. Equity will not entertain a petition to enjoin the enforcement of an alleged unconstitutional law, where the complainant does not show that such enforcement is attempted against his personal or property rights.

3. It follows from the above, that an injunction will not lie to restrain the enforcement of an act on the ground of its unconstitutionality because such enforcement would have the effect of preventing complainant from obtaining a license to sell intoxicants.

4. The General Assembly of this State, by virtue of its police powers, has the authority to regulate and control the sale of all intoxicating liquors; and can establish dispensaries for an exclusive sale of such liquors, under the management of agents or officials created for this purpose.

5. A local act establishing such a dispensary in any county of this State does not violate the constitutional rights of any citizen; and such legislation is not prohibited by any provision in the constitution of this State or the United States.

6. A monopoly in such a business thus created by the General Assembly, by conferring exclusive privilege of engaging in the traffic upon a body corporate, is not violative of par. 2, sec. 3, art. 1 of the constitution of Georgia, prohibiting the passage of any law "making irrevocable grants of special privileges or immunities."

7. The dispensary act for the county of Terrell, approved December 10, 1897 (Acts of 1897, p. 562), contains no provision in violation of art. 1, sec. 8, of the constitution of the United States, on the subject of interstate commerce.

8. The act above mentioned does not contain in its body matter different from what is expressed in the title thereof, within the meaning of par 8, sec. 7, art. 3 of the constitution of this State.

9. There is no general law of the State under which there can be had in any county a sale of intoxicating liquors by means of dispensaries under the control of the government. Hence the act under consideration does not violate par. 1, sec. 4, art. 1 of the constitution of this State, declaring that no special law shall be enacted in any case for which provision has been made by an existing general law.

10. The act in question being a valid constitutional law, the court did not err in refusing to enjoin its enforcement, and in refusing a writ of mandamus to compel the issuing of a liquor license prohibited by the act.

Argued February 8, — Decided March 24, 1898.

Petition for injunction, etc. Before Judge Sheffield. Terrell county. January 15, 1898.

This is a petition for an injunction against the opening and operating of dispensaries for the sale of liquors under an act of the legislature approved December 10, 1897 (Acts 1897, p. 562). It is alleged, that petitioners are residents and taxpayers of the county, and of the city of Dawson, and for twelve months or more preceding the bringing of their petition have been engaged in the business of selling spirituous, vinous, and malt liquors therein, under a license from the municipal authorities,

and have complied with all the requirements of law; that under the provisions of the act in question, Christie et al., dispensary commissioners, have established and are preparing to open dispensaries in Dawson and in other incorporated towns in the county, and for that purpose are about to contract debts which, if their action is legal, will be a charge upon the county and upon these towns; that the effect of the act will be to confer upon the dispensary commissioners, for the benefit of the county and of these towns, a monopoly of the business of selling liquors in the county, and drive the petitioners out of the liquor business, leaving them with a considerable stock of liquors which can not be sold in the county, and entailing upon them great financial loss; that large quantities of liquors were bought by the petitioners in other States and sold by them in original packages, and the effect of the act would be to hinder and disturb interstate commerce; that since the expiration of their licenses for the year 1897, to wit on January 4, 1898, the clerk of the city council of Dawson, who, under ordinances of the city, was the officer whose duty it was to issue licenses for the sale of spirituous liquors within the corporate limits of the city, refused to grant such a license to one of petitioners who had made due application therefor, the refusal being upon the ground that the dispensary act had repealed the law conferring upon the city the power to issue licenses; and that the effect of the act will be to increase the burdens of taxation upon petitioners and other taxpayers, by reason of the loss of revenue from licenses for the sale of liquors. They contend that the act is unconstitutional and void, because: (1) It is in conflict with paragraph 8, section 7, article 3 of the constitution of the State, in this: that the title of the act refers to more than one subject-matter; and the body of the act contains matter different from what is expressed in the title thereof, no reference to the provision for penalties being had in the caption, and the act containing other matter not referred to or expressed in the caption. (2) The General Assembly is prohibited by the constitution of the State from creating such a corporation as is created under this act, and from granting such charter as is thereby granted, and the act contravenes the general law of the

State providing for the grant of corporate powers.   (3) The act contravenes paragraph 1, section 4, article 1 of the constitution of the State, which provides that all general laws shall have a uniform operation throughout the State, and that no special law shall be enacted in any case for which provision has been made by a general law.  (4) The act is violative of paragraph 2, section 3, article 1 of the constitution of the State, which forbids legislation making irrevocable grants of special privileges or immunities.  (5) The business of selling liquors is outside of and contrary to the scope of the corporate powers of the county, and of said incorporated towns, and violative of the general policy of the laws and statutes of the State.  (6) The acts of the county and of said towns in their efforts to carry on said business and to contract debts through the dispensary commissioners, and the contracting of debts by the dispensary commissioners for the benefit of the county and of said towns in connection with the dispensary business, are violative of paragraph 1, section 7, article 7 of the constitution of the State, which limits and defines the character of debts that may be created by counties and municipal corporations.  (7) It violates paragraph 1, section 3, article 12 of the constitution of the State, which requires county officers to be uniform throughout the State, and prohibits the creation of any new office by legislative enactment.  (8) It violates that provision of the constitution of the State which prevents any citizen from being deprived of his liberty or property without due process of law.  (9) It interferes with interstate commerce, and is violative of article 1, section 8, of the constitution of the United States, and articles 5 and 7 of the amendments thereto.   Petitioners pray that the act be declared unconstitutional and void, and that the dispensary commissioners be enjoined from carrying it into operation, and the county of Terrell and the city council of Dawson from participating with the commissioners in their efforts to carry out the same, or from using the funds of the county for that purpose, or from contracting any debts therefor.

The defendants filed answers in which the contentions of the petitioners as to the validity of the act in question were denied. The city council of Dawson answered that it had, on January

3, 1898, passed ordinances prohibiting any one from having or keeping about his premises any malt, vinous or intoxicating liquors for the purpose of sale, barter or gift to any one. At the hearing the petitioners introduced evidence in support of their allegations of fact, and the defendants introduced in evidence the ordinances referred to in the answer of the city council. The petition was in part granted and in part refused, an injunction being granted only against the paying out of any money of the county or the making of any debt on the part of the county in operating the dispensary. Petitioners excepted.

For the facts of the mandamus case see the opinion.

*William C. Worrill,* for plaintiffs.  *James G. Parks, M. C. Edwards Jr.,* and *Hoke Smith & H. C. Peeples,* for defendants.

LEWIS, J.  On January 15, 1898, Plumb, one of the petitioners in the injunction case, presented to the judge of the superior court his petition against Whitehead, as clerk of the city council of Dawson, for mandamus to require the defendant to grant to petitioner a license to sell at retail spirituous liquors within the corporate limits of the city of Dawson, the petition containing a prayer for mandamus nisi requiring the clerk to show cause in vacation why the mandamus should not be made absolute. The petition alleged, in substance, that under the charter of the city of Dawson, exclusive right to grant license to sell liquors within the limits of the city, and fixing the rates and amounts of the license, and the terms and conditions upon which it should issue, is conferred upon the mayor and aldermen of the city; that by an ordinance of the city it was made the duty of the council, at its regular meetings in January of each year, or as soon thereafter as possible, to examine and make such changes as in their judgment may be necessary in the annual license ordinances of the city; that an ordinance of the city makes it the duty of the clerk of the city council to issue and keep a record of all licenses; that petitioner had conformed to all the ordinances touching the grant of licenses for the sale of liquors; that he had been in the business as a retailer of liquors in the city during the year 1897, selling from $6,000 to $8,000 worth of liquors, at least one half of which were pur-

chased by petitioner from persons residing out of this State, and in other States of the United States, from which the liquors were shipped to the city of Dawson to petitioner; that by reason of the clerk's refusal to grant him the license applied for, not only his business but his course of dealing and business relations in said course of interstate commerce had been interrupted and stopped; that many of the goods he bought from parties residing in other States were sold in the original packages, and that he had on hand a stock of liquors worth about $2,000, a large part of which was bought of said non-resident dealers. The petition further alleged that the clerk refused to grant him the license applied for, solely upon the ground that he was prohibited from so doing by virtue of the special act passed for Terrell county by the General Assembly of the State, known as the dispensary act. An attack was then made in the petition on the act as being unconstitutional and void, on the same grounds as were set forth in the application for injunction. The court refused to grant the mandamus nisi, and petitioner excepted. These two cases were argued together, and the principles set forth in the headnotes dispose of both of them.

1–3. Upon the very threshold of these cases we are confronted with the question as to whether or not the plaintiffs in the application for injunction base their action upon any right of person or property guaranteed by the constitution and protected by the laws of the land. It is true they declare that they are taxpayers, and allege a purpose on the part of the county, or the municipal government, to levy upon their property, as well as that of other taxpayers, a tax for the purpose of carrying into effect an act claimed to be void; but so far as this property right is concerned, they are fully protected by the grant of an injunction restraining the levy of a tax or the creation of a debt for any such purpose. Their right, therefore, is based solely upon the idea that they are entitled to have issued to them a license to sell spirituous and other intoxicating liquors. This business is an illegal one without the grant of a special privilege from the State, or from some other tribunal clothed by the State with the power. It is, therefore, neither a contract nor a property right, but a mere permit to do what would otherwise

be in violation of the statutes of the State.    It is a license which the authorities in control have the power to grant or withhold, and even, in their discretion, to revoke after grant.    When the plaintiffs first entered into their business, it was upon these conditions that they necessarily accepted their licenses.    No contract, express or implied, was ever by any power entered into with them guaranteeing a continuation of the privilege; and a refusal to continue such license, it matters not upon what grounds based, does not interfere with or violate any of their vested rights; there being in the charter of the municipality, giving it control over this matter, no restriction placed upon an exercise of its discretion and authority.    *Ison* v. *Mayor and Council of Griffin*, 98 *Ga.* 623.    It is a well-settled rule of law that equity will not grant relief to any one who seeks to enjoin that which in nowise affects his rights of person or property.    One seeking such relief must show a threatened wrong to himself, an invasion of some legal right, and some interest in preventing a wrong sought to be perpetrated.    Before a law can be attacked by any citizen on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his rights of person or property.    *Reid* v. *Mayor etc. of Eatonton*, 80 *Ga.* 755; *Nelms* v. *Pinson*, 92 *Ga.* 441; Cooley's Const. Lim. (5th ed.) 197; Marshall v. Donovan, 10 Bush (Ky.), 682 (5); 1 High on Injunctions (3d ed.), § 64; 56 Pa. St. 359.    It follows, therefore, that even if the above-mentioned act is unconstitutional, the plaintiffs in these cases have not established any right to have it so declared by the courts.    While these views necessarily dispose of the cases by leading to an affirmance of the judgment below, we will nevertheless proceed to determine the other questions made in this record, as they involve the validity of an important act of the legislature.

4, 5.    It is idle, in a court of law created for the purpose of declaring legal principles or passing upon legal rights of litigants at issue, to discuss "inherent and inalienable rights," supposed to exist in the enlightened conscience or consciousness of mankind, yet undefined by any rule known to the organic or statute laws of a State.    In discussing the validity of an act passed by the legislative branch of the government, no light

can be gathered by an attempt to show that it contravenes the general purposes for which a free government is established. In all independent States and nations absolute power rests somewhere. In this country it is neither lodged with the executive nor the legislative nor the judicial branches of the government, nor with all combined; but sovereignty rests with the people of the several States. The ultimate source of legislative power is traceable to them; and in their sovereign capacity they have a right to frame laws for their own government, and for the regulation of human conduct on all matters over which exclusive power has not by them been delegated to the Federal government. Acting in their organized capacity, and under the forms of existing laws, they can rend asunder all bonds that are thrown as restraint around individual action, unbridle liberty, and make license as free as the winds of heaven, and as wild as the waves of the sea. They can, on the other hand, so frame their organic and statute law as to place upon their own necks a yoke as galling as ever serf carried under the edict of a despot. It is eminently in this sense that we live under a free government, which simply means a government created by the people, and which they are absolutely free to change or modify at their pleasure. It is worse than useless then for the courts to undertake to pass upon the validity of a statute by an inquiry as to whether or not it is just or oppressive. To enter into such a field of investigation would be like embarking upon the sea without rudder or compass. A law is not necessarily unconstitutional or otherwise invalid because it is unjust. We live under a constitutional government, and written laws; and the courts can enforce only such rights as they protect, and remedy such wrongs as they redress. Keeping these principles in view, we will now undertake to consider the validity and constitutionality of the particular act of the legislature involved in these cases. We must, therefore, look to the constitution of the State to determine what powers of legislation are vested in the General Assembly.

In par. 22, sec. 7, art. 3 of that instrument (Civil Code, § 5784) it is declared: "The General Assembly shall have power to make all laws and ordinances consistent with this con-

stitution, and not repugnant to the constitution of the United States, which they shall deem necessary and proper for the welfare of the State." It follows, therefore, that the General Assembly of this State is absolutely unrestricted in its power of legislation so long as it does not undertake to enact measures prohibited by the State or Federal constitution. A marked difference between the State legislature and the United States Congress in this particular is, that the former can do all things not prohibited by the constitution, while the latter can exercise no power not delegated to it by the States in the Federal constitution. The sale of spirituous liquors in Georgia has always been a matter subject to regulation by the General Assembly, and which has actually been regulated, to a greater or less extent, by the acts of the State legislature. There is nothing in the constitution of this State or the United States that can be fairly construed so as to interfere with a free exercise of this power by the legislature. No principle perhaps is more universally recognized by the courts than the right of a State, under general police powers reserved and granted to its legislature, to regulate and control the traffic in any commodity the use of which may endanger either the public health or morals. It is equally well established that the sale of intoxicating liquors is peculiarly, on account of the evil effects resulting from their use, subject to legislative control and regulation. To such an extent can this power be exercised, that an absolute prohibition of the sale of this commodity throughout a State can be accomplished by an act of its legislature; and among the number of cases reviewing such legislation, our attention has never been called to a single case in a court of last resort where the validity and constitutionality of such an act has not been upheld. If this power is conceded to a legislature, we can see no possible escape from the conclusion that it necessarily carries with it the right to regulate the exclusive sale under a direct supervision of the government. As we have before seen, the contract or property right of no citizen is affected by such a measure.

6. It is insisted, in this case, that the act in question is violative of par. 2, sec. 3, art. 1 of the constitution of Georgia, pro-

hibiting the passage of any law "making irrevocable grants of special privileges or immunities;" that it thus creates a monopoly in a private person or corporation, which is against the spirit of the constitution. We can not see that this constitutional provision has any application whatever to the case. There is no private corporation created by the act, and no irrevocable grant of a privilege to any one. On the contrary, the act prohibits any one from engaging on their individual account in this business; the government itself takes charge of it and undertakes to control the traffic through the instrumentality of public officials. It is further argued that the legislature has no right to authorize a municipality to so embark into a commercial business for profit and gain. It is manifest that the primary object of this dispensary act was not for the purpose of gain, and embarking a municipality in a commercial enterprise, but that the end and purpose had in view was a regulation of the sale of an injurious and dangerous beverage in the interest of temperance, and for the purpose of throwing a safeguard around the morals of the people. The revenue derived from this source was merely one of its incidental features. We do not mean to say, however, that the legislature has not the power to confer upon a municipality a right to conduct such a business purely as a matter looking to an increase in its revenue from the profits that might accrue. Our attention has been called to no provision in the constitution, either expressly or by fair implication denying to the legislature the right to clothe a municipality with such a privilege. Nor do we mean to say that the legislature has the right to create a monopoly of any one of the ordinary callings of life which one has a right to pursue, so long as its pursuit does not involve evil or danger to society. But when the State bestows a privilege which is not a common natural right, such as the right to engage in the liquor traffic, it may create a monopoly, and yet no right of the individual be violated. It has often been held that monopolies may be created, even in such business as may fall within the ordinary callings of life, where an indiscriminate conduct thereof by individuals under certain circumstances and in certain places might be injurious to the common welfare. These

principles are fully discussed in Tiedeman's Limitations of Police Power, § 105. On pages 323, 324 and 325 of that work are cited a number of cases sustaining these views, and others in apparent conflict. The author himself adopts the doctrine laid down by the Supreme Court of the United States in the Slaughter-House Cases. These cases originated in Louisiana near New Orleans, upon suits brought to resist the enforcement of a law passed by that city, providing for the erection by certain private corporations of slaughter-houses, to which all butchers within a certain area were required to bring their cattle for slaughter; the act absolutely prohibiting the slaughter of the animals elsewhere. Justice Miller, in the opinion delivered in that case (see 16 Wallace, 64), said: "But it is said that in creating a corporation for this purpose, and conferring upon it exclusive privileges— privileges which it is said constitute a monopoly,—the legislature has exceeded its power. If this statute had imposed on the City of New Orleans precisely the same duties, accompanied by the same privileges, which it has on the corporation which it created, it is believed that no question would have been raised as to its constitutionality. In that case the effect on the butchers in pursuit of their occupation and on the public would have been the same as it is now. Why can not the legislature confer the same powers on another corporation, created for a lawful and useful public object, that it can on the municipal corporation already existing? That wherever a legislature has the right to accomplish a certain result, and that result is best attained by means of a corporation, it has the right to create such corporation, and to endow it with the powers necessary to effect the desired and lawful purpose, seems hardly to admit of debate."

In the case of Townsend v. State of Indiana, 37 L. R. A. 294–5, a statute restricting the use of natural gas which one had lawfully obtained possession of from his own premises was upheld. In that case the court said: "A statute can not be declared unconstitutional simply because it may be wrong and unjust, or because it violates the spirit of our institutions or impairs those rights which it is the object of free government to protect." In the case of LeClaire v. City of Davenport, 13

Iowa, 210, an exclusive grant by the city of the privilege of erecting a market-house was sustained. In the case of the City of New Orleans *v.* Heirs of Guillotte, 12 La. Ann. 818–820, an erection of a market-house with exclusive privileges, and placing the same under the control of a police official, was decided to be not an unlawful grant of power. There is some conflict of authority upon the right of a legislature or a municipality to create a monopoly in a business legal per se, and which requires no license from the State in order to enable individuals to engage therein; but the weight of authority as well as reason seems to us to sustain the view that wherever such a power is exercised in the interests of the public health or morals, it is legitimately within the police powers of a State. It is based upon the maxim, "*sic utere tuo ut alienum non lædas.*" If this is true with reference to ordinary occupations innocent in themselves, with how much greater force does the doctrine apply to an industry recognized everywhere as one which the public welfare demands should be continuously under the control and police regulation of the government. In "Intoxicating-Liquor Cases," 25 Kas. 751, it was held that an act to regulate the sale of liquors for medical and other purposes was not unconstitutional because it restricted the right to sell to druggists. See also State *v.* Lindgrove, 41 Pac. Rep. 688–691. In the case of State *v.* Brennan's Liquors, 25 Conn. 279–288, it was held that an act granting exclusive sale of liquors to towns through agents appointed for that purpose, was not invalid as giving to the towns a monopoly of such sale.

This question is ably and fully discussed by Justice Gary, in an opinion indicating considerable research, in the case of State ex rel. George *v.* City Council of Aiken, 20 S. E. Rep. 221, in which the validity of the recent dispensary act of the State of South Carolina was held to be within the police power of the State, and not to be unconstitutional. The opinion of Chief Justice McIver, who dissented from a majority of the court in that case, is based largely upon the idea that the whole scope and intent of the dispensary act of South Carolina was to enable the State to monopolize the liquor traffic with a view to the profit of such business. As before indicated, the Georgia act

now under consideration is not open to such a criticism. For further authority bearing on this point, see Cooley's Const. Lim. (5th ed.) 718; 11 Am. & Eng. Enc. L. 583 et seq.; Lincoln *v.* Smith, 27 Vt. 328. ·In recognition of this same great power of a State touching the control of the liquor traffic within her borders are the decisions of this court. *Ison* v. *Mayor and Council of Griffin*, 98 *Ga.* 623; *Menken* v. *City of Atlanta*, 78 *Ga.* 668. In the case of *Chambers* v. *Mayor and Council of Barnesville*, 89 *Ga.* 739, it was held, that under the general authority to regulate and control the sale in Barnesville of spirituous and malt liquor, etc., the town authorities could adopt by ordinance a dispensary, and, as means of regulation and control, prohibit under a penalty the sale by any person other than the keeper of the dispensary. It is true that in the case of *Mayor etc. of Leesburg* v. *Putnam*, ante 110, it was held by this court that neither the general welfare clause, nor the power to license and regulate barrooms, etc., included the power to run and operate barrooms and saloons, or to otherwise embark the municipal corporation into the business of selling liquors. The court further ruled, however, that the exercise of such power must rest upon express legislative authority. This express legislative authority has been granted in the present case; and neither in the light of authority nor reason can we reach the conclusion that it is violative of any of the rights of a citizen, or of any principle in the constitution, State or Federal.

7. It was argued by counsel for plaintiffs in error, that this dispensary act for Terrell county was especially in violation of the provisions of the constitution of the United States upon the subject of interstate commerce. We fail to see how these provisions have any bearing upon this case, how the act is in violation thereof, or of any act of Congress upon the subject. The act of Congress known as the "Wilson bill," approved August 8, 1890, 26 Stat. 313, c. 728, provides: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in

the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." It was held by the Supreme Court of the United States, In re Rahrer, 140 U. S. 545, that after that act took effect, such liquor or liquids, introduced into a State or Territory from another State, whether in original packages or otherwise, became subject to the operation of such of its then existing laws as had been properly enacted in the exercise of its police powers; among which was the statute of the State of Kansas in question, prohibiting the manufacture, sale or barter of any spirituous or other intoxicating liquors, except for medical, scientific and mechanical purposes. It is true that in the case of Scott *v.* Donald, and Gardner *v.* Donald, 165 U. S. 58, et seq., it was decided that that portion of the dispensary act of South Carolina relating to the seizure of liquors was an obstruction and interference with interstate commerce, in so far as it prohibited the importation of wines and liquors from other States by citizens of South Carolina for their own use. Among the special provisions of the dispensary act of South Carolina was also one to the effect that the State commissioner might enter into contract with responsible grape-growers of the State for the sale of domestic wines through the dispensary, it being limited in its charge to a certain per cent. profit. There was no such limitation of charge in the case of imported wines. These, and similar features of the act, were construed by a majority of the court to be a discrimination against liquors imported from other States. The entire act itself, of course, was not declared unconstitutional, but only such features of it as were in conflict with the right of Congress to regulate interstate commerce. Chief Justice McIver, in his dissenting opinion above cited, also held that so much of the dispensary act of South Carolina as forbids a citizen to import liquors from another State or foreign country *for his own use* was in violation of this provision of the constitution of the United States. But the act of the Georgia legislature now in question contains no such provision; nor does it in any wise discriminate against

the commodities of another State. It does not undertake to prohibit the importation of liquors for personal use and consumption, nor authorize their seizure after being so imported. It strikes a blow against the *sale of any* liquors in Terrell county, except as provided for in the act; and we think the Wilson act, above cited, is clearly applicable. The plaintiffs simply contend that they have on hand a stock of liquors imported from other States, evidently not in their possession for personal use or consumption, but for sale in their own right, and in the conduct of their individual business. They complain that the act for Terrell county prohibits a *sale* by *them* of these liquors as well as all others on hand.

8. It is contended that the act in question contains in the body thereof matter different from what is expressed in the title, and therefore violates par. 8, sec. 7, art. 3 of the constitution of this State. A substantial and not a literal compliance with this provision in the constitution is all that is necessary. It was never contemplated that the title should give a complete synopsis of the act. The title is sufficiently definite to indicate the general purpose and scope of the act that follows. *Martin* v. *Broach*, 6 *Ga.* 21; *Hope* v. *Mayor etc. of Gainesville*, 72 *Ga.* 246; *Howell* v. *State*, 71 *Ga.* 224; *Goldsmith* v. *Rome R. R. Co.*, 62 *Ga.* 473; *Churchill* v. *Walker*, 68 *Ga.* 681. The only reason assigned as to why the act is unconstitutional on this account was, because in the title there was no allusion to the penalty provided for in the body of the act for a violation of its terms. In the case of *Brown* v. *State*, 73 *Ga.* 38, it appears that the caption of the act in question in that case was, "to provide for the collection of the special taxes imposed by law on dealers in spirituous or malt liquors, or intoxicating bitters, and for other purposes." In the body of the act it was provided that upon a failure to pay such tax, the dealer may be indicted and punished for a misdemeanor. It was held that such act was objectionable neither as containing matter different from its title, nor as containing more than one subject-matter.

9. It was further urged by plaintiffs in error that the act was violative of par. 1, sec. 4, art. 1 of the constitution, declaring that no special law shall be enacted in any case for which pro-

vision has been made by an existing general law. We are at a loss to know under what general law of the State of Georgia dispensaries can be established. It was contended that the local option law of the State was the only means by which prohibition could be had in a county; but this local act for the county of Terrell does not seek or provide for prohibition. Its object, on the contrary, is to legalize the sale of liquors in a certain way, to wit, by dispensaries under the management and control of officials appointed under the provisions of the act. Certainly this end could not be accomplished by any provision in the local option law, or any other general law of the State.

10. Both of these cases we are now considering rested entirely upon the alleged unconstitutionality of this dispensary act for Terrell county. After a careful consideration of all the questions made by the record, we are satisfied that the act is a valid and constitutional law, and that the court did right in refusing the injunction, and the writ of mandamus. The courts of a State will always presume that its lawmaking power acted with integrity in the passage of any act, so as to do no violence to the constitution; and they will never declare an act of this co-ordinate branch of the government unconstitutional unless clearly and manifestly so. While they should not suffer the constitutional rights of any one to be infringed upon by legislation, though enacted under the guise of exercising a police power, yet they will not by their decisions curtail that power, except when an effort is made to overleap the plain and positive barriers erected by the organic law. This rule will not be relaxed when the basic principle of such legislation is founded on the maxim, *"Salus populi est suprema lex."*

　　　　Judgment affirmed. *All the Justices concurring.*